UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CARNEY HOSPITAL                     )
TRANSITIONAL CARE UNIT,             )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   Case No. 06-2234 (RCL)
                                    )
MICHAEL O. LEAVITT, Secretary,      )
    U.S. Department of Health       )
    and Human Services,             )
                                    )
        Defendant.                  )
_____)

**PLAINTIFF CARNEY HOSPITAL TRANSITIONAL CARE UNIT'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to LCvR 7(b), the plaintiff, Carney Hospital Transitional Care Unit ("Carney TCU") respectfully submits this Opposition to Defendant's Motion to Dismiss.

Contrary to the thrust of defendant's contention that it has "failed to exhaust" administrative remedies, plaintiff Carney TCU has spent over a decade fully and completely exhausting the administrative process contemplated by the Medicare Act and associated regulations in its pursuit of the new provider exemption to which it is entitled. Carney TCU applied for this exemption for the entirely new Skilled Nursing Facility it opened in an impoverished central-city neighborhood of Boston in furtherance of government policy to address a shortage of skilled nursing beds. Unfortunately, it has been forced to foot the bill for approximately $3 million in reimbursements it should have received for its first three years of operations. Now, as Carney TCU's quest for its new provider exemption enters its twelfth year, Defendant Secretary of Health and Human Services ("Defendant Secretary") seeks to delay

judicial review to Carney TCU by claiming that more administrative process is needed. Carney TCU respectfully requests this Court to deny Defendant's Motion to Dismiss, and to grant Summary Judgment to Carney TCU for the reasons set forth in the Motion filed by it in *Carney Hospital Transitional Care Unit v. Leavitt*, No. 04-1598 (RCL) (hereinafter "Carney I"). Defendant's Motion to Dismiss, which parrots its previous filings on this issue in Carney I, mischaracterizes the facts regarding the procedural posture of this case and misstates the law applicable to that procedural posture.

A. PROCEDURAL POSTURE

Carney TCU has fully and completely exhausted all administrative processes pertinent to its application for a new provider exemption. These processes included (a) its initial application for the new provider exemption on February 1, 1996; (b) a May 8, 1996 denial by CMS (then named the Health Care Finance Administration or HCFA); (c) a July 25, 1996 appeal of CMS's denial to the Provider Reimbursement Review Board ("PRRB"); (d) an evidentiary hearing before the PRRB, nearly six years later, on February 7 and 8, 2002, at which CMS had a full and ample opportunity to make its record and document its basis for denying Carney TCU's application; (e) receipt of a July 16, 2004 decision of the PRRB affirming CMS's action; (f) election by the Administrator of CMS not to take action upon the PRRB's decision; (g) timely filing of a Complaint in this Court on September 14, 2004 (Carney I) seeking review of the Secretary's final action; (h) receipt of the final decision of CMS on November 2, 2006, following this Court's limited Remand to the Secretary; and (i) timely filing of a Complaint in this Court on December 28, 2006 in this action (hereinafter "Carney II"), within the time prescribed for such a Complaint, in order to preserve its rights.[1]

---

[1] At p. 6 of Defendant's Memorandum in Support of Motion to Dismiss (hereinafter "Defendant's Memorandum"), Defendant Secretary appears to take issue with Carney TCU's filing of Carney II given its substantial similarity to

Carney TCU's two Complaints set forth three independent, and independently sufficient, reasons why Carney TCU is entitled to a new provider exemption.  Carney TCU is entitled to the exemption because (a) its hospital-based skilled nursing facility was entirely new, with no significant connection to the predecessor Franklin Nursing Home ("FNH") from which it had acquired "operating rights"; (b) FNH had never operated as the "equivalent" of a skilled nursing facility by "primarily engaging" in providing such services; and (c) Carney TCU served a new population of patients separate and distinct from those served by FNH.

Soon after Carney TCU filed its Complaint in Carney I, Defendant filed a Consent Motion to Stay Proceedings, allowed by this Court on November 17, 2004.  That Motion was premised on the fact that "one" of the three claims for relief in Carney TCU's Complaint could be resolved by the United States Court of Appeals for the District of Columbia Circuit in the case entitled *St. Elizabeth's Medical Center of Boston, Inc. v. Thompson*.  As this Court is aware, by decision dated February 4, 2005, the Court of Appeals in *St. Elizabeth's* decided this issue favorably to Carney TCU.[2]

On April 21, 2005, Defendant filed a Motion to Remand.  Like his Consent Motion to Stay, Defendant Secretary's Motion to Remand was directed to only one of the three bases for

---

Carney I.  Carney TCU's obvious purpose in filing Carney II was to foreclose any subsequent argument that the agency's November 2, 2006 final action is not properly before this Court.  Consistent with the concern underlying the filing of Carney II, Defendant Secretary argues, in opposition to Carney TCU's Summary Judgment Motion in Carney I, that this Court's remand of a single issue in Carney I to the Secretary deprived the Court of continuing jurisdiction over that and the non-remanded issues.  Anticipating such an argument, and notwithstanding its lack of merit, the filing of Carney II assures this Court's jurisdiction both over the non-remanded issues and the finally-decided issue which was remanded.

[2]  As argued in Carney TCU's Motion for Summary Judgment in Carney I, the D.C. Circuit's recent decision in *St. Elizabeth's Medical Center v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005), mandates a ruling for Carney TCU on the issue of whether the former FNH was primarily engaged in providing skilled services because it requires the reviewing court to look beyond "some" skilled services that were "occasionally" provided and look to the type of service in which the former facility was "primarily" engaged.  According to Medicare regulations and authority from CMS Manuals, as briefed in Carney I, a nursing facility that does not provide skilled services on a daily basis to each patient is a facility primarily engaged in providing unskilled custodial and maintenance care.  Carney TCU qualifies for the new provider exemption because it is a Skilled Nursing Facility providing daily skilled care whereas FNH was an entirely different type of nursing facility providing primarily custodial care to its residents.

Carney TCU's Complaint – the issue whether, in light of the standards set forth by the Court of Appeals in the *St. Elizabeth's* case, FNH had been "primarily engaged" in providing skilled nursing services. No suggestion was made that remand was necessary or appropriate with respect to the other two bases for Carney TCU's Complaint.

On June 1, 2006 this Court granted the Defendant Secretary's Motion to Remand, issuing a narrow Order in the precise terms requested by the Defendant. The case was <u>not</u> remanded to the Secretary for all purposes. Rather, the Order expressly limited remand to the Secretary "for application of the standard announced in *St. Elizabeth's Medical Center of Boston, Inc. v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005)" based on "the full administrative record that was before the Provider Reimbursement Review Board." The only issue which the Secretary requested to be remanded, and the only issue the Court did remand, was whether, upon consideration of the full administrative record before the PRRB viewed against the *St. Elizabeth's* legal standard, FNH was or was not "primarily engaged" in the provision of skilled nursing services.

Defendant Secretary took a variety of actions following entry of this Court's Order of Remand. On July 7, 2006, the Deputy Administrator for CMS delegated to CMS the obligation imposed upon the Secretary by this Court's June 1, 2006 Order. Then, by letter dated November 2, 2006, CMS rendered the determination which this Court had directed the Secretary to make. In direct violation of this Court's Order, CMS did not limit its consideration to "the full administrative record that was before" the PRRB, but, rather, relied extensively on information nowhere presented to the PRRB by either party, including information from "professional nurses" apparently consulted by CMS after remand, a process of evaluating "skilled nursing services" apparently conducted after the remand, and other documentary information nowhere

contained in the administrative record before the PRRB.  As discussed at length in Carney TCU's Motion for Summary Judgment in Carney I, CMS also misapplied the legal standard set forth in the *St. Elizabeth's* decision.

In its November 2, 2006 letter, CMS suggested that Carney TCU must reapply to the PRRB for review of an action mandated by this Court to be taken by the Secretary, despite the fact that the PRRB had already conducted a two day evidentiary hearing on Carney's new provider application and had full opportunity to address the issues raised by Carney TCU which are now before this Court.  In fact, as noted in Carney TCU's Complaint herein, at paragraphs 36-38, the Chairperson of the PRRB had rendered a dissenting opinion correctly applying the standard subsequently adopted in the St. Elizabeth's decision.  In his Motion to Dismiss, the Defendant Secretary argues that a second PRRB hearing, with its attendant redundancy and delay, is required for Carney TCU to "exhaust" its administrative remedies.  Nothing in this Court's Order of Remand contemplates or authorizes further proceedings before the PRRB; to the contrary, this Court expressly mandated the Secretary to make a determination <u>based on the full, existing PRRB record</u>.  In order to preserve its rights, Carney TCU filed with the PRRB, within the time provided for authorized appeals to that body, a request for a hearing.  In that filing, Carney TCU made clear to the PRRB its position that the PRRB lacks jurisdiction over the matter, or any basis upon which to conduct a second hearing.

In his Memorandum in support of the pending Motion to Dismiss, at p.14, n.3, Defendant Secretary suggests that Carney TCU's protective filing with the PRRB somehow forces it to proceed in that forum "[i]n the interest of judicial economy and the law's disfavor of parallel proceedings before different tribunals on the same matter . . . ."  The Defendant Secretary fails to inform the Court, however, that the Government itself has requested that the PRRB stay the case

pending a decision by this Court, and that the PRRB has agreed with that request and stayed all proceedings before it. By letter dated May 17, 2007, the Fiscal Intermediary (which operates under contract with CMS and represents the interests of CMS before the PRRB) requested the PRRB appeal to be stayed "pending the disposition of the federal court case <u>which will give the parties guidance</u>" (emphasis added). (A copy of this request is attached hereto marked Exhibit A.) The Fiscal Intermediary explained that "[s]uch a course appears to be the most efficient manner of proceeding with these appeals and is consistent with the proper management of scarce judicial and Board resources." *Id*. By Order dated June 14, 2007, the PRRB has granted the request "and all relevant proceedings are suspended." (A copy of the PRRB's June 14, 2007 Order is attached hereto as Exhibit B.) Carney TCU respectfully suggests that it is for this Court to determine whether, under its Order of Remand, the PRRB has any required further role to play. The PRRB, by its order, agrees.

The November 2, 2006 CMS letter expressly states, at 6: "This is the final decision of the CMS." Therefore, and contrary to the Defendant Secretary's disingenuous suggestion, Defendant's Motion to Dismiss at 12, that it is merely "the initial decision" of CMS, the November 2, 2006 letter clearly is "final administrative action" on the single issue upon which this Court remanded the matter. Defendant's suggestion that, over a decade after first requesting a new provider exemption, Carney TCU finds itself, based on this Court's limited Order of Remand, at the beginning of the administrative process, is difficult to comprehend. The "initial decision" of CMS was rendered nearly eleven years ago, on May 8, 1996. Nor, as suggested at Defendant's Motion to Dismiss at 6, did this Court's Order of Remand, either in plain language or under any reasonable reading, authorize CMS to "conduct[ ] initial exemption evaluations" including "collect[ing] and review[ing] the medical documentation from the nursing facility."

The Order of Remand mandated that the Secretary review Carney TCU's request for a new provider exemption, in light of the *St. Elizabeth*'s decision, using the existing administrative record that was before the PRRB. The Secretary had and has no authority to "collect" and "review" additional factual materials.

Having set forth the undisputed facts regarding the procedural steps taken in this case, Carney TCU now turns to the legal standards applicable to Defendant Secretary's Motion to Dismiss.

### B.   LEGAL STANDARDS

Defendant Secretary's Motion to Dismiss claims that Carney TCU has not exhausted the procedures of the Medicare Act for administrative review, that Carney TCU seeks to deprive the Secretary of his chance to review Carney's new provider exemption, and that this Court has no jurisdiction over Carney TCU's Complaint because of the purported lack of exhaustion. The Secretary provides no new arguments in support of its claims, all of which the parties have fully briefed in Carney I, on Carney TCU's Motion for Summary Judgment therein.

As described in more detail herein (and, again, as briefed in Carney I), Carney TCU has exhausted all steps in the administrative review process in its quest of over a decade for its new provider exemption. The Secretary has had numerous chances to review Carney TCU's new provider exemption including, the initial denial; the decision by CMS not to take action on the decision of the PRRB, which resulted in that decision being the final decision of the Secretary; and, most recently, in response to this Court's narrow Order of Remand which requested the Secretary to review one issue in Carney TCU's Complaint based on the existing administrative record. This Order of Remand did not provide the Secretary with jurisdiction to restart the administrative process or to "collect" new factual evidence outside of the administrative record. Accordingly, and as stated on the face of the November 2, 2006 letter from CMS, the Secretary

has made his final decision. The Secretary's improper action in considering evidence outside of the administrative record and his complaint that he has not had enough of a chance to consider the single issue remanded to him do not, singly or collectively, serve to deprive this Court of jurisdiction.

Given the Secretary's inappropriate actions – his delays in drawing out the administrative process and his attempts to reopen the administrative record, despite clear contrary instructions from this Court – Carney TCU has taken all possible procedural steps to preserve its rights. Thus, Carney filed two Complaints in this matter and a request for hearing before the PRRB. As noted above, the Government itself, via the Intermediary, has requested successfully that the PRRB stay any action on Carney TCU's PRRB appeal, pending a decision by this Court. Carney TCU respectfully requests that this Court deny the Motion to Dismiss and grant Summary Judgment to Carney TCU on any or all of the three grounds raised in its Complaint and its Motion for Summary Judgment in Carney I.

1. <u>Carney TCU has exhausted all administrative procedures, and the Secretary has taken "final action" on the single issue remanded to him</u>.

The suggestion that Carney TCU, over eleven years after commencing its quest for a new provider exemption, still has not exhausted its administrative remedies before the agency is beyond comprehension. It is also factually inaccurate, heedless of the procedural steps which Carney TCU has exhausted, and inconsistent with any reasonable reading and application of the regulations and this Court's Order of Remand. Cases cited by the Secretary in his Motion to Dismiss do not provide authority contrary to the position of Carney TCU.

As described above, what Defendant Secretary characterizes as its "initial decision" is, in fact, "the final decision" on the remanded issue. CMS's November 2, 2006 letter, at 6, expressly

states it is "the final decision." It is the "final decision" on the narrow issue subject to this Court's June 1, 2006 Order of Remand. Likewise, it is the "final decision" which CMS was directed, on behalf of the Secretary, to render pursuant to a July 7, 2006 "remand" of the administrator. In addition, it is a "final decision" which follows all of the procedural steps required of an applicant for a new provider exemption: (a) the filing of the request for exemption itself; (b) denial of the request by the fiscal intermediary; (c) timely request for a hearing before the PRRB; (d) completion of a PRRB hearing and rendering of the PRRB's decision; and (e) opportunity for the Secretary to review and act upon the PRRB's decision. This Court's Order of Remand in no way negated those steps, or required that they be repeated. For this reason alone, Defendant Secretary's exhaustion argument is meritless.

Any suggestion that the Secretary, upon this Court's narrow and precise remand, had authority to require Carney TCU to recommence an entire eleven year long process likewise has no legal support. The Secretary's jurisdiction over the matter was defined by the Order of Remand. Indeed, the Secretary recognized the limitations upon its jurisdiction in its July 7, 2006 remand Order to CMS, which specifies that CMS must only review the matter in light of *St. Elizabeth*'s and based upon the existing administrative record.

Defendant Secretary now claims that a course open to him was to remand the decision this Court asked the Secretary to make to the "CMS policy component." *See* Defendant's Memorandum at 10. The Secretary further claims that Carney TCU could not fail to understand Defendant's position because counsel for Carney TCU is "an experienced health care litigator." *Id.* at 13. Carney TCU has scoured the statutes and regulations relied upon by Defendant Secretary and has found no support for the proposition that some sort of "CMS policy component" must make a decision on a remand specifically directed to the Secretary for

consideration of a legal standard related to the new provider exemption. Defendant's Motion to Dismiss points to no authority whereby the Secretary, on a limited remand from the United States District Court, can impose an obligation upon an applicant to entirely redo a completed administrative process for new provider exemption.

In the Defendant's Memorandum at 10, the Secretary complains that the administrative record "extends more than 4,300 pages." Rather than supporting the Secretary's position, the extensive nature of the administrative record bolsters Carney TCU's argument that the administrative record is fulsome, complete and ready for review by this Court. And, for Defendant Secretary, his office has had a decade to review, consider, and reconsider the issue. The legal standard authored by the D.C. Circuit in *St. Elizabeth*'s does not require the Secretary to "collect" new evidence or reopen the factual questions considered in the decade of administrative proceedings – and, this Court's Order of Remand expressly forbids such attempts to "collect" and determine new facts because the Order requires that consideration be based upon the existing administrative record.

Defendant Secretary suggests that he is unable to make such a decision because of the "4,300 pages" of the administrative record and the difficulty of applying the standard announced in *St. Elizabeth* for what constitutes an institution "primarily engaged in" providing skilled nursing services. *See* Defendant's Memorandum at 10. Despite the Secretary's protestation, however, the *St. Elizabeth*'s court itself was perfectly able to apply its new legal standard to an existing record of the new provider exemption at issue in the case without needing to reopen the administrative record or require a duplicative hearing before the PRRB. Again, and as noted above, the very issue was previously before the PRRB in this case, and addressed correctly by the PRRB Chairperson in her dissent. Complaint, paragraphs 36-38. And, this Court did not

request that a "CMS policy component" or the PRRB to reopen the administrative record and "collect" new "medical documentation," as Defendant Secretary claims his agency must do and has done. *See* Defendant's Memorandum at 6. The Order of Remand instead requested the opinion of the Secretary addressing a single issue on the *St. Elizabeth*'s standard based on the existing administrative record. Just as the *St. Elizabeth*'s court was able to apply the "primarily engaged in" standard to the administrative record in its case, and the PRRB Chairperson in her dissent in this case, this Court asked the Secretary to apply the standard to the administrative record in Carney TCU's appeal. And, by delegation, he has done so, albeit incorrectly.

      The Secretary is not starting from some sort of blank slate where his staff must "collect" information on the facts of this case and review those facts for the first time. The Secretary and his delegates have had over a decade to review the facts and the Secretary himself has had numerous opportunities to review the issues at hand. Based on the administrative record assessed in light of the *St. Elizabeth*'s decision, Carney TCU has provided a detailed Summary Judgment brief to Defendant Secretary and to this Court in Carney I which describes in great particularity the reasons why the FNH was not "primarily engaged" in providing skilled nursing services (demonstrating as well that the Carney TCU is entitled to the new provider exemption based on two other, independent, grounds). Instead of responding to Carney TCU's Summary Judgment Motion in any substantive manner, Defendant Secretary has relied on the same procedural argument he advances in this Motion to Dismiss. Defendant Secretary having had over a decade to consider the issues raised in Carney TCU's new provider exemption application, and said application having been exhaustively reviewed in every stage of the administrative process, the issues raised by Carney TCU's Complaint in Carney I, which are the same issues raised in this case, are now ripe for decision by this Court.

Defendant Secretary cites no authority for his exhaustion argument other than that previously briefed in Carney I. As explained in the Carney I briefing, the *Anaheim Hospital* case, cited by the Defendant Secretary in his Memorandum at 12, is plainly distinguishable. In that case, the United States District Court directly "remanded the case to the PRRB . . . for reconsideration of its earlier ruling." *Id*. at 850. The Court of Appeals expressly recognized that, by such a remand order, the District Court "was . . . asking the PRRB to reconsider" its original decision. *Id*. By contrast, this Court did not remand to the PRRB and, instead, expressly directed "the Secretary" to consider only the closed administrative record "that was before the Provider Reimbursement Review Board." A "final decision" on that remanded issue is reported in CMS' November 2, 2006 letter.[3]

---

[3] Cases cited by Defendant Secretary on the generic proposition that administrative remedies must be exhausted prior to judicial review are inapposite. In *Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C. Cir. 1977), cited in Defendant's Memorandum at pages 12 and 16, the D.C. Circuit notes that "before a suitor may obtain judicial consideration of a claim arising under the Medicare Act, he must first present the claim to the Provider Reimbursement Review Board and obtain a 'final decision' by it," *id*. at 110. This is exactly what the Carney TCU has done. Unlike in *Association of American Medical Colleges*, where the claimant never presented its claim to the PRRB, Carney TCU participated in a two day evidentiary hearing before the PRRB, which fully considered the issues of this case.

In *Weinberger v. Salfi*, 422 U.S. 749 (1975), cited in Defendant's Memorandum at pages 12, 13, and 15, the Supreme Court expressed concern for "premature" interference with agency process in order to allow efficient agency function and to allow the parties and the courts the benefit of agency expertise. After over a decade of administrative review in which Carney TCU completed every stage of the administrative process, Carney TCU is not seeking any sort of "premature" interference. And, the Secretary and the PRRB have provided numerous written decisions giving Carney TCU and this Court the opportunity to benefit from the agency's position. The *Salfi* Court also noted the importance of allowing the agency to "compile a record which is adequate for judicial review." *Id*. at 765. In Carney's situation, a full and adequate record has already been compiled in the process which resulted in a two day hearing before the PRRB, and this Court recognized as much in remanding this case for review based upon the "full administrative record." The full administrative record has been before this Court since May 9, 2005, which strongly favors the disposition by this Court of all issues in the original case (Carney I).

The Defendant cites *American Chiropractic Association Inc.*, 431 F.3d 812 (D.C. Cir. 2005), for the generic proposition that judicial review may occur after a claimant has presented its claim to the Secretary and thus exhausted its administrative remedies. But, the *American Chiropractic Association* claimant had made no attempt to present its claim to the Secretary or to avail itself of the administrative process. Carney TCU's position is entirely different because Carney TCU has presented its claim at all steps of the administrative process and now seeks this Court's review of that long and full administrative record.

The Defendant also relies upon *Shalala v. Illinois Council on Long Term Care, Inc.*, 120 S. Ct. 1084 (1999), for its claim that Carney TCU has not exhausted the administrative process. But, the rationales of *Illinois Council* support Carney TCU's position. The *Illinois Council* Court directed use of the administrative process in order to give the agency "the opportunity to reconsider its policies, interpretations, and regulations." *Id*. at 1099.

For each of the above reasons, therefore, Carney TCU has fully exhausted its administrative remedies, final action has been taken upon the narrow issue remanded to the agency by this Court in June, 2006, and Carney TCU seeks the review of this Court of CMS's denial of its application for a new provider exemption.

Of the three grounds upon which both Carney I and Carney II are based, only one ground – that FNH had never operated as the "equivalent" of a skilled nursing facility by "primarily engaging" in providing such services – was remanded to the Secretary in this Court's Order of Remand. Thus, that ground for relief is the only ground implicated by the Secretary's exhaustion arguments. This Court did not remand Carney TCU's other two grounds (that Carney TCU's hospital-based skilled nursing facility was entirely new, with no significant connection to the predecessor FNH from which it had acquired "operating rights" and that Carney TCU served

---

Carney TCU has presented its claim at all stages of the administrative process, which has provided the agency numerous opportunities to "reconsider" its policies. The final decision now lies with the federal courts. The *Illinois Council* Court also noted that "[a]fter the action has been so channeled [through the agency], the court will consider the contention[s] . . . . And a court reviewing an agency's determination . . . has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide." *Id*. The Defendant Secretary has had his opportunity to decide the issues raised by Carney TCU in Carney's full use of the administrative channels available, and this Court now has the authority to resolve the issues presented and to provide relief to Carney TCU.

Finally, Defendant cites *Nichols v. Board of Trustees of Asbestos Workers Local 24 Pension Plan*, 725 F. Supp. 568 (D.D.C. 1989) for the "purposes behind the exhaustion doctrine," Defendant's Memorandum at 16, but does not analyze these "purposes," all of which favor Carney TCU. According to the *Nichols* court, exhaustion works to avoid "premature interruption" of the administrative process – here, the administrative process has been completed in full over a more than ten year period. *Nichols* states that the agency should "develop the necessary factual background" – again, that background has been fully and completely developed in an extensive administrative record. The *Nichols* court discusses the need for the agency to "exercise its discretion" or "apply its expertise" – the agency has had numerous opportunities to do both and has, repeatedly, denied Carney TCU the new provider exemption, in a manner contrary to law. *Nichols* is concerned about conserving judicial resources "since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene" – Defendant Secretary shows no indication of "vindicating" the rights of Carney TCU but, instead, has used its multiple review levels to provide multiple excuses for denying Carney TCU's request. Similarly, *Nichols*' concern with giving the agency "a chance to discover and correct its own errors" has not occurred in this case because CMS has dug in its heels at all levels of review (albeit, in the PRRB, over a vigorous dissent by the Board Chair who would have granted Carney TCU its exemption). *Nichols* is, lastly, concerned with "flouting" the agency review process, which might weaken the effectiveness of the agency. Carney TCU, however, has not "flouted" the administrative review process. Carney TCU has presented its petition in every stage of the review process and now seeks judicial review. The *Nichols* decision concerned a claimant who had never presented her case before the agency at issue and was "flouting" a court ruling that she must first present her petition to the agency. Carney TCU has exhausted the administrative procedures in place at CMS and seeks now to have judicial review of the agency's final decision, as allowed for by law.

a new population of patients separate and distinct from those served by FNH) for review by the Secretary, because the *St. Elizabeth*'s opinion did not address these grounds.  Thus, this Court can rule for Carney TCU on Summary Judgment in Carney I on either or both of these grounds, which are unopposed by any briefing from the Secretary.  Any of Carney TCU's three grounds, briefed at length in Carney TCU's Summary Judgment Motion and presented herein as well, are independently sufficient for this Court to grant Summary Judgment in favor of Carney TCU.

### C.   CONCLUSION

Since October 5, 1995, Carney TCU has provided critically needed skilled nursing services to a diverse, largely impoverished population of patients in a central city neighborhood of Boston.  Carney TCU provides such services in furtherance of the Government's policy to increase the supply of skilled nursing beds.  For well over a decade, Carney TCU has footed substantial expense in providing these services for which, on the basis of facts and legal propositions undisputed substantively in Defendant's Motion to Dismiss, Carney TCU has been entitled to over $3 million of additional reimbursement from CMS as a "new provider."  Carney TCU respectfully urges this Court to reject the unlawful delay proposed by Defendant Secretary and to enter Summary Judgment on behalf of Carney TCU in Carney I.

Respectfully submitted,

   /s/ Thomas B. Smith
Thomas B. Smith (D.C. Bar No. 412192)
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005-3948
Tel:  202-508-4600
Fax:  202-508-4650

-15-

          John C. Kane, Jr.
          Jeffrey L. Heidt
          Janna J. Hansen (D.C. Bar No. 494606)
          ROPES & GRAY LLP
          One International Place
          Boston, MA  02110-2624
          Tel:  617-951-7000
          Fax:  617-951-7050

Dated: June 21, 2007



**BlueCross BlueShield Association**

An Association of Independent
Blue Cross and Blue Shield Plans

1310 G Street, N.W.
Washington, D.C. 20005
202.626.4780
Fax 202.626.4833

May 17, 2007

UPS Next Business Day

Ms. Suzanne Cochran, Chair
Provider Reimbursement Review Board
Division of Hearings and Decisions
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

Attn: Ms. Lisa Ogilvie

    Re: Carney Hospital Transitional Care Unit, PRRB No. 02-0816 (FYE 1998)
    <u>Provider No. 22-5681, FYEs 9/30/96, 9/30/97, and 9/30/98</u>

Dear Ms. Cochran:

Reference is made to correspondence dated April 19, 2007 from counsel for the Provider to the Board regarding the above captioned action. In this letter, counsel advises that an earlier appeal of a denial of an exemption to routine cost limits for this facility resulted in a remand by the federal court to the Administrator to apply the standard announced in *St. Elizabeth's Medical Center of Boston v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005). The Administrator subsequently denied the exemption. As a result of this denial, the Provider has filed another action in federal court alleging that the Administrator misapplied the standard set forth in *St. Elizabeth's*. This action remains pending.

Denial of the FY 1998 exemption is presently scheduled for hearing on June 28, 2007. In addition, we understand that the Board has consolidated all years for hearing on this date.

In light of this history, we request that these appeals be held in abeyance pending the disposition of the federal court case which will give the parties guidance. Such a course appears to be the most efficient manner of proceeding with these appeals and is consistent with the proper management of scarce judicial and Board resources.

A copy of this letter has been provided to counsel for the Provider.

Sincerely,

*[signature]*

Arthur E. Peabody, Jr.
Associate Counsel

cc:    Jeffrey L. Heidt
Ropes & Gray LLP
One International Plaza
Boston, MA 02110-2624

Ms. Uzzle



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671   FAX: 410-786-5298
Internet: www.cms.hhs.gov/PRRBReview

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

Refer to: 02-0816

JUN 1 4 2007

**VIA FACSIMILE AND CERTIFIED MAIL**

Mr. Arthur E. Peabody, Jr.
Associate Counsel
BlueCross BlueShield Association
1310 G Street, N.W.
Washington, DC  20005

Mr. Jeffrey L. Heidt
Ropes & Gray
One International Place
Boston, MA  02110-2624

RE:  The Carney Hospital
Provider No.: 22-5681
FYEs - 09/30/1996; 09/30/1997 and 09/30/1998
PRRB Case No.: 02-0816

Dear Messrs. Peabody and Heidt:

In a letter dated May 17, 2007 to the Provider Reimbursement Review Board ("Board"), the Intermediary requested that the above-captioned appeal be placed in abeyance. By letter dated May 31, 2007 to the Board, the Provider advised that it concurred with the Intermediary's request for abeyance.

The Board hereby **grants** the request for abeyance. The Board hearing scheduled for June 28, 2007 is hereby cancelled and all relevant proceedings are suspended.

The Board notes that the Parties have requested the stay of proceedings pending the outcome of another case currently pending in the federal courts. In its correspondence, the Intermediary advised that the disposition of the federal court case will give the Parties guidance as to the subject appeal.

Within 60 days of the issuance of a decision in the federal court case, the Provider Representative is to notify the Board in writing and advise whether the subject appeal should be activated and the case rescheduled for a Board hearing or whether the case can be settled based on the decision rendered in the federal court case.

Board Members:
Suzanne Cochran
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

FOR THE BOARD:

*Gary B. Blodgett*

Gary B. Blodgett, D.D.S.
Board Member

cc:  Christine Blowers
National Government Services-Maine
MP: ME0202-F010
110 Free Street
Portland, ME  04104-5073

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
CARNEY HOSPITAL                       )
TRANSITIONAL CARE UNIT,               )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )   Case No. 06-2234 (RCL)
                                      )
MICHAEL O. LEAVITT, Secretary,        )
    U.S. Department of Health         )
    and Human Services,               )
                                      )
        Defendant.                    )
_____)

### PLAINTIFF CARNEY HOSPITAL TRANSITIONAL CARE UNIT'S PROPOSED ORDER

Upon consideration of Defendant's Motion to Dismiss, Plaintiff's Opposition thereto, and all relevant facts and circumstances, it is hereby

ORDERED that Defendant's Motion to Dismiss in *Carney Hospital Transitional Care Unit v. Leavitt*, No. 06-2234 (RCL) is DENIED.

SO ORDERED.

_____
United States District Judge

Dated: _____